THE PEOPLE OF THE STATE OF NEW YORK ex rel. WILLIAM DARROW AND CHARLES A. DAVISON, AS TRUSTEES FOR HARRIET IVISON, RESPONDENTS, v. MICHAEL COLEMAN, EDWARD C. DONNELLY AND THOMAS L. FEITNER, COMMISSIONERS OF TAXES AND ASSESSMENTS OF THE CITY AND COUNTY OF NEW YORK, APPELLANTS.

*Personal property held by trustees — taxable under chapter 392 of 1883 — trust property apportioned among the trustees residing in different States.*

Upon an appeal from an order vacating an assessment against the personal property of the relators, as trustees for Harriet Ivison, it appeared that the property sought to be taxed consisted of mortgages on lands in several of the western States, of the par value of $40,400, to which securities the trustees of Harriet Ivison held the legal title. These trustees were three in number, namely, William Darrow and Charles A. Davison, who were residents of New York, and David B. Ivison, who was a resident of New Jersey. The securities were in New Jersey in the actual custody of Mr. Ivison. The original assessment was $60,000, but on an application to strike it off the books as erroneous the commissioners struck from the roll the name of David B. Ivison and reduced the assessment against the New York trustees from $60,000 to $45,000.

*Held*, that the phrase " owner or owners " in chapter 392 of 1883, which was entitled "An act to further define property that shall be subject to taxation," included trustees. (DANIELS, J., dissenting.)

That the persons taxable under chapter 392 of the Laws of 1883 included those whose ownership in the debts or obligations, which were the subject of taxation, was representative, as well as those whose ownership was absolute.

That as only two of the three trustees were residents of this State, and as it has been held under such circumstances that the trust property, for the purposes of taxation, should be regarded as apportioned among the trustees according to their number, the amount assessed against the relators should be reduced by one-third.

*Hardy* v. *Inhabitants of Yarmouth* (6 Allen, 277, 285); *State ex rel. Harkness* v. *Matthews* (10 Ohio St., 431, 437); *Mayor of Baltimore* v. *Sterling* (29 Md., 48) followed.

Appeal from an order made at a Special Term held in the county of New York, which was entered in the office of the clerk of the city and county of New York on April 26, 1888, vacating an assessment against the personal property of the relators as trustees for Harriet Ivison.

*George S. Coleman,* for the appellants.

*S. S. Brownell,* for the respondents.

Bartlett, J. :

By chapter 392 of the Laws of 1883, which is entitled " An act to further define property that shall be subject to taxation," it is provided that " all debts and obligations for the payment of money due or owing to persons residing within this State, however secured, or wherever such securities shall be held, shall be deemed, for the purposes of taxation, personal estate within the State, and shall be assessed as such to the owner or owners thereof in the town, village or ward in which such owner or owners shall reside at the time such assessment shall be made." The property sought to be taxed in the present case consists of mortgages on lands in several of the western States, of the par value of $40,400, to which securities the trustees of Harriet Ivison hold the legal title. These trustees are three in number, namely, William Darrow and Charles A. Davison, who are residents of New York, and David B. Ivison, who is a resident of New Jersey. The securities are in New Jersey in the actual custody of Mr. Ivison. The original assessment was $60,000, and was made against all three trustees ; but, upon an application to strike it off the books as erroneous and illegal, the commissioners of taxes and assessments struck from the roll the name of David B. Ivison, the New Jersey trustee, and reduced the assessment against the New York trustees from $60,000 to $45,000, which appears to have been regarded as the value of the mortgages already mentioned. It is this reduced assessment which the court at Special Term has vacated and set aside on the ground that it is irregular and erroneous. The phrase " owner or owners " in the act of 1883, as construed by

the learned judge below, does not include a trustee or trustees, but applies only to owners of personal property in their individual right.

After a careful consideration of the question I am unable to concur in this view. The purpose of the act of 1883 was not to define what persons should be subject to taxation, but to provide that persons already liable to be taxed under existing laws should be taxed for property that had hitherto been exempt from assessment by reason of the fact that the securities representing such property were outside the territorial limits of the State. The object of the enactment was to add to the taxable property which should fall within the scope of our system of taxation, but not to effect any change in respect to taxable persons. This is apparent from the title of the act itself. The expression "owner or owners," in the first section of chapter 392 of the Laws of 1883, should, therefore, it seems to me, be held to comprise such persons as were taxable as owners under the Revised Statutes; and there can be no doubt that trustees were thus taxable. The first provision of the Revised Statutes in respect to the property which shall be subject to taxation is that "all lands and all personal estate within this State, whether owned by individuals or by corporations, shall be liable to taxation, subject to the exemptions hereafter specified." (2 R. S. [7th ed.], 981, § 1.) It is further provided that "every person shall be assessed in the town or ward where he resides when the assessment is made, for all lands then owned by him within such town or ward and occupied by him, or wholly unoccupied." (2 R. S. [7th ed.], 989, § 1.) Although in this latter provision nothing is said about the taxation of lands owned by trustees, a subsequent provision, in regard to the manner in which assessments are to be made, shows that the ownership of land which subjects it to taxation under the Revised Statutes may be the mere legal title of a trustee; for the law further directs that where a person is assessed as *trustee*, guardian, executor or administrator, he shall be assessed with the addition to his name of his representative character, and for the full value of the real estate held by him in such representative character. (2 R. S. [7th ed.], 991, § 10.) So much for the ownership of real estate. As to personalty, the Revised Statutes make it, perhaps, even more clear that the title of a trustee renders him liable to taxation in this State as owner. "Every person shall be assessed in the town

or ward where he resides when the assessment is made for all personal estate owned by him, *including all personal estate in his possession or under his control as agent, trustee,* guardian, executor or administrator, and in no case shall property so held under either of those trusts be assessed against any other person." (2 R. S. [7th ed.], 989, § 5.)

From these references it will be seen that the legislature in establishing our system of taxation, which still has its basis in the Revised Statutes, was careful to leave no doubt as to the persons who should be taxable by reason of their ownership of lands or goods within this State; and, out of abundant caution, it was made perfectly clear that those who held real estate or personal property in the representative capacity of trustees were to be taxed as owners, though the assessment-rolls were required to show that they were assessed in their representative character. The act of 1883 must be construed and interpreted with reference to the existing state of the law at the time it was passed and took effect; and trustees, as I have shown, being then liable to taxation as owners, it follows that they fall within the scope and intent of the phrase " owner or owners," as employed in the statute in question. It is said, by the learned judge who heard the case at Special Term, that the trustees here are not the owners of the mortgage securities in the ordinary acceptation of that term; but it seems to me that it is only the legal ownership which is contemplated by an act of the legislature, like that under consideration here. Certainly, the beneficiaries could not be taxed on account of these securities under the act of 1883.

Upon this branch of the case, my conclusion is that the persons taxable under chapter 392 of the Laws of 1883 include those whose ownership in the debts or obligations, which are the subject of taxation, is representative, as well as those whose ownership is absolute. The order appealed from, so far as it wholly vacates the assessment, ought, therefore, to be reversed.

I think, however, that the relators were assessed for too large an amount. The value of the mortgage securities appears to have been $40,400. There are three trustees, and, as is remarked in the opinion of the court below, the property cannot be said to belong to any one or two of them as contra-distinguished from the other. Only two of the trustees are residents of this State. Under such circumstances, it has

been held that the trust property, for purposes of taxation, should be regarded as apportioned among the trustees, according to their number. (*Hardy* v. *Inhabitants of Yarmouth*, 6 Allen, 277, 285; *State ex. rel Harkness* v. *Matthews*, 10 Ohio St., 431, 437; *Mayor of Baltimore* v. *Stirling*, 29 Md., 48.) This rule is both equitable and practicable, and should be applied in such cases as the present. It requires that the amount assessed against the relators should be reduced by one-third.

I think the order appealed from should be reversed, with costs, and the proceedings remitted to the Special Term where application may be made for a reduction of the assessment in accordance with the views which have been expressed.

Van Brunt, P. J., concurred.

Daniels, J. (dissenting):

The relators, together with David B. Ivison, are trustees of the estate of Henry Ivison, deceased, for the benefit of his widow Harriet Ivison, during her life, with remainder upon her death to his children. The trust estate was set apart by a decree of the surrogate of this county to these trustees for the execution of the trust This was done in February, 1886. The trust estate consisted of securities for the payment of money, and they have been held by and in the possession of David B. Ivison, as one of the three trustees at Rutherford, in the State of New Jersey, where he resides; the other two trustees, being the relators in this proceeding, were residents of the city and county of New York, but neither of these trustees had possession of any part of the trust estate. That was wholly committed to the trustee residing in New Jersey. An application was made to the commissioners of taxes and assessments to strike out the assessment on the ground that the estate was not liable to taxation within the city and county of New York. They declined to do that, but struck out of the assessment the name of the trustee Ivison, and reduced it from $60,000 to $45,000. Thereupon a writ of *certiorari* was allowed to review the action of the commissioners, and upon the hearing of the return to the writ their decision was reversed and the property held not to be liable to taxation within this State, and it is from the order reversing the action of the commissioners that this appeal has been taken.

As the law existed in this State prior to the enactment of chapter 392 of the Laws of 1883, only personal property within the State was liable here to assessment for the purpose of taxation. (1 R. S. [2d ed.], 379, § 1.) And it was repeatedly so held by the court of last resort in this State. The decisions relating to this subject were collected and considered in *People ex rel. Jefferson* v. *Smith* (88 N. Y., 576). This decision was made in the year 1882, and at the next session of the legislature in 1883, chapter 392 of the laws of that year was enacted, and that declared that all debts and obligations for the payment of money due or owing to persons residing within this State, however secured or wherever such securities should be held, should be deemed, for the purposes of taxation, personal estate within this State.

But this statute failed to declare that personal estate in the possession or under the control of a trustee, guardian, executor or administrator, should be included within, or be subject to, its provisions, as that had been done concerning personal property within this State by section 5 of article 1, title 2, chapter 13 of part 1 of the Revised Statutes. This section, after declaring that every person should be assessed in the town where he resided for all personal estate owned by him, then added the further provision, that it should include personal estate in his possession, or under his control, as trustee, guardian, executor or administrator. And this addition disclosed the understanding of the revisers, as well as of the legislature, to be that personal estate held by a trustee, or in either of these other capacities, would not be subject to assessment and taxation, without this additional direction. For if it had not been so understood, the law would simply have declared that every person should be assessed for all personal estate owned by him in the town or ward where he resided, and terminated the enactment in that manner. That was the nature of the statute, on this subject, contained in the Revised Laws. (2 R. L., 509, chap. 52.) There no provision whatever was added for taxing, to a person as owner, such property as should be held by him as trustee, guardian, executor or administrator. And the change afterwards made by adding this phraseology to the preceding law is a further and significant circumstance, indicating that, in the judgment of the legislature, it was necessary that these words should be added to render a trust estate liable to assessment and

taxation against the trustee as owner. In other words, it exhibits the understanding to have been that a direction alone, for the assessment of personal estate owned by an individual, would not be broad enough to include such as should be in his possession or under his control as a trustee. As the term "owned" was employed and is usually understood, it would not include an estate held in trust, as that is not technically owned by the trustee, but held and possessed by him for the exclusive benefit of another.

There is reason, therefore, for subjecting the act of 1883 to the more limited construction that it was designed only to include property of the description mentioned in it which should be owned in his own right by the person assessed and taxed. The correctness of this view is still further evinced by the fact that the estate to be assessed and taxed by virtue of its enactment has been described as debts and obligations due or owing to persons residing within this State, and that, according to the preceding legislation which is to be considered in the construction which should be given to this act, will ordinarily include no more than such debts and obligations as shall be due or owing for his own benefit to the person assessed. This construction is, to a certain extent, also sustained by the circumstances out of which this act of 1883 seems to have originated. In the preceding year, and for a long series of years prior to the decision of *People* v. *Smith* (*supra*), the relator in that proceeding had escaped taxation on the ground that his money had been invested in the western States, and securities taken for the investments by agents there residing, which were there held and possessed by such agents. The legislature, actuated by the conviction that it was unjust that such property should escape taxation, while the owner of it actually resided in and received the protection of the laws of this State, enacted this statute to meet that class of cases. That was the occasion or necessity for the enactment, and, under the authorities, it may be considered as an aid to discover the intent of the legislature as well as the construction to which the language of the statute should be subjected. For the circumstances leading to the enactment of a statute may, where its language is obscure or doubtful, be considered, in a measure, as indicating the construction which the act should receive from the courts. *Dibble* v. *Hathaway* (11 Hun, 571–574) and *People ex rel Supervisors* v. *Hopkins*

(2 Thomp. & Cook, 586), where it was said that "If any doubt arises from the terms employed by the legislature, it has always been held a safe means of collecting the intention, to call in aid the ground and cause of making the statute. (Id., 588; *People ex rel. Collins* v. *Spicer*, 99 N. Y., 225; *People* v. *N. Y. & M. B. Ry. Co.*, 84 id., 565.)

With the aid of these circumstances, and the course of antecedent legislation in this State on the same subject, the conclusion seems to be warranted that the act of 1883 should not be so extended by construction as to include property held in trust by trustees, no part of which is within or protected by the laws of this State. In *People ex rel. Neustadt* v. *Coleman* (42 Hun, 581) an estate of this description was held to be liable to assessment and taxation in this State for the reason that the securities were within the city and county of New York, and this liability was held to exist, notwithstanding the fact that but one of the trustees resided in this city. And the principle of that decision would seem to require, where the trust estate is held and possessed by one of two or more joint trustees in another State, that it should be relieved from assessment for the purpose of taxation in this State. The laws of this State afford such an estate no security or protection whatever, while, in the case last referred to, the estate held liable for taxation was wholly subject to and protected by the laws of this State.

For these reasons, and those assigned for the decision at the Special Term, the order appealed from should be affirmed, with ten dollars costs and also the disbursements.

Order reversed, with costs, and proceedings remitted to Special Term, where application may be made for a reduction of the assessment in accordance with views expressed in opinion.